Good morning, everyone. Thank you. Before we begin arguments this morning, Judge Fernandes and I would like to thank and acknowledge Judge Roger Woolman from the Eighth Circuit from Sioux City, South Dakota. Sioux Falls. Sioux Falls, South Dakota, my mistake. Thank you, Judge Woolman. Thank you for having me. Right. Okay. So the first two cases on the calendar, Singh v. Barr and United States of America v. Dunlap are submitted on the And may it please the court. My name is Rachel Julegay, and I'm an attorney with the Federal Defenders of Montana. And I am here today on behalf of the appellant, Mr. Brandon Sorenson. Your Honors, an amendment to the United States Sentencing Guidelines in 2016 removed the residual clause from the crime of violence definition in Section 4B1.2. This removal is critical for reasons that I will address here. But in summary, the analysis that originally led the court in United States v. Schumachter to expand the 4B1.2 controlled substance offense definition to include solicitation hinged on the language of the residual clause. But that residual clause is now gone. And nothing remains to support the addition of solicitation to the 4B1.2 definition. As such, the district court erred in holding that Mr. Sorenson's prior Montana drug distribution conviction qualified as a 4B1.2 predicate offense due to its inclusion of offers to sell. So the point you just made didn't seem to trouble a recent panel in United States v. Crum. Yes, Your Honor. The recent decision of Crum does not affect this particular analysis because this specific issue was not raised before the court nor was it decided by the court in Crum. It did not address the issue of United States v. Schumachter or Schumachter's reliance on United States v. Cox. Rather, Crum was addressing primarily the issue of whether or not the commentary should even be permitted to expand the guideline definition to include certain inchoate offenses. The issue before the court here today is whether or not, even if the commentary is permitted to expand the guideline definition, whether or not solicitation in particular can be part of that expansion. And again, analysis of this issue necessarily begins with the case of United States v. Cox. In Cox, the court had found that a Texas conviction for solicitation for murder constituted a solely on the residual clause. And Schumachter, which was also decided prior to the amendment removing the residual clause from the guidelines definition, relied on the reasoning of Cox as well as a desire for parity between the 4B1.2 definition for a crime of violence and the 4B1.2 definition for a controlled substance offense to determine that controlled substance offenses also included solicitation offenses. But because of that 2016 amendment, the guideline that was in effect at the time that Mr. Sorensen was sentenced did not contain that residuals clause, which was the sole basis for determining that the definition could be expanded to include solicitation. And once you take away the residual clause, which is no longer in effect, there is nothing in either the plain language of the guidelines or the commentary or an examination of the guidelines as a whole to support expansion of the definition specifically to include solicitation. In fact, an examination of the plain language of both the guideline and the commentary as well as the guidelines as a whole actually support a contrary finding that solicitation is not appropriately added to a list that deliberately left it off to begin with. An examination of the guidelines as a whole demonstrates that the Sentencing Commission knows how to, and does in fact elect, to at times group solicitation with conspiracy and attempt when that result is warranted, but at other times correspondingly knows how to distinguish and treat solicitation differently than conspiracy and attempt, again, when that result is warranted. Specifically, as I addressed in my brief, an examination of 2X1.1, which is the portion of the guidelines that explicitly addresses solicitation, conspiracy and attempt, does just that. It initially groups these three inchoate type offenses together, but then if you look at the body of the guideline, you see that the Sentencing Commission does not do the same for conspiracy and attempt. Specifically, the 3-point level reduction in the offense level that is provided for, in turn, for attempt, conspiracy, and then solicitation. If you examine the criteria for getting that 3-point reduction, it is essentially the same for conspiracy and attempt. It focuses on the offender's conduct and whether or not the substantive steps of the offense have been completed either by the offender himself or, in the instance of conspiracy, a similarly situated co-conspirator. Solicitation has a markedly different definition for determining eligibility for the 3-point reduction. Specifically, what the guideline implies is that the entire offense of solicitation can actually have been completed and the offender can still be eligible for the 3-point reduction unless the person solicited has completed all of the substantive steps necessary for completion of the offense. This, again, demonstrates that the Commission knows how to group solicitation in with conspiracy and attempt when that is the intended result and how to treat it differently when that is the intended result. Importantly, if you look at 2X as a whole, you see that there's a number of different inchoate type offenses that are listed there, and three of those offenses were selected for inclusion in the commentary to 4B.1.2, and three of them were explicitly left out, one of which was solicitation. I think importantly also in examining the guidelines as a whole, we can see that elsewhere in the guidelines, the Commission chose to treat solicitation differently. In Application Note 9 to 1B.1.3 of the guidelines, where it actually grouped solicitation, misprison of a felony, and accessory after the fact together, treating it, again, differently than attempt and conspiracy. Notably, those three type inchoate offenses are also the ones that were left out of the commentary's attempt to expand the 4B.1.2 guidelines. In addition, because the Court inquired about the Crum case, I do think it's important to discuss that momentarily, although I don't think it does anything to undercut this argument, which is that an examination of Schumante again, in light of the removal of the residual clause from the guidelines, requires revisiting this issue. But Crum determined, based on the Vea-Gonzalez case, a Ninth Circuit case that predated United States v. Stinson, that the Ninth Circuit had a different line of commentary could be permitted to expand the guidelines. In that case, Vea-Gonzalez relied heavily on Anderson. A portion of Anderson's framework for how to interpret the commentary was rejected by the Court in United States v. Stinson. And specifically, in Stinson, the Court found that it was not appropriate to view commentary as a statement of the drafter's intent. When you look at the fact that that entire framework for how Anderson approached the commentary was actually rejected in Stinson, that would call the holding of Vea-Gonzalez into question. Unless the Court has further questions. You know, the problem, you make some, I don't want to say convincing arguments to start with, but you make, I mean, I'm sensitive to your arguments, but it seems like as a pre-judge panel, we're pretty much bound by our existing law. And unless we could say that there's a case from a higher authority that undercuts completely the rationale in Shoemate and cases that it relied upon. So where there's a doctrine underpinning the Miller v. Gammy that says that we as a three-judge panel are bound pretty much to follow existing law. We can't just toss it aside. And that discussion appears in Crum as well. If the Court is referring to the Vea-Gonzalez discussion, yes, that does appear in Crum. However, what was not addressed in Crum, and I think does leave the Court free to make a different determination than was made in Shoemate and Cox, is the removal of the residual clause from the 4B1.2 definition of the crime of violence. An examination of the Court's decision in Shoemate relied heavily, in fact entirely, on the reasoning of United States v. Cox, which relied on an interpretation of the residual clause. There was no other textual support cited in either Cox or Shoemate other than the residual clause, which is now no longer in effect. And in that sense, the Court is not bound by that because we have had a change in the law. It's not a change in case law, but it is a change in whether or not that residual clause is still present in the guidelines for the Court to rely upon it. Okay. Thank you. You can have a minute for rebuttal. Let's hear from the government. Thank you, Your Honor. Thank you, Your Honor. Tim Tatarka of the District of Montana on behalf of the United States. The problem with the defense's arguments as raised by the Court here is that this Court has found in three published cases that solicitation or offers for sale are covered within the prohibited conduct under 4B1.2. And as the Court notes, the only way that a three-judge panel can ignore or overrule prior precedent is if there is intervening higher authority, which is clearly irreconcilable with the existing precedent. And again, not only is it clear that Shoemate and Valle-Gonzalez, for that matter, are settled law, but it is settled law that they are settled law, as the Court decided a few months ago with respect to Crum. This Court, as a three-judge panel, is just as bound, is not free to ignore Crum's holding that Shoemate and Valle-Gonzalez are good law any more than it would be free to ignore Shoemate or Valle-Gonzalez themselves. What do you do with your argument that, as a result of the elimination of the residual clause, that that pulls the rug out from under Shoemate? Well, a couple things. One is, whether or not the residual clause is included, the analysis of Cox wasn't analyzing the residual clause. It was analyzing the application of the commentary, the guidelines commentary, to the crime of violence component of 4B1.2. That analysis is really no difference, regardless of the subsequent change in law. And I would note that in the defense's briefs, the argument was, well, United States v. Johnson stepped in, and that was why the residual clause was invalidated, as I think the defense recognized the United States v. Johnson doesn't reach the guidelines provision. There was no constitutional problem that affected Cox. The guidelines, the sentencing commission changed the law, but it doesn't. That doesn't affect the validity of Cox, and it certainly doesn't affect the application or the holdings of Shoemate, Lee, and Crum with respect to the fact that offers for sale does fall within the prohibited conduct. The conduct is prohibited by 4B1.2. And again, I think that law is correct, but as a three-judge panel, this court is bound by that in any event. And the conduct prohibited under Montana law, offers for sale, falls safely within what this court has found is covered under 4B1.2 as a controlled substance offense. So unless the court has any further questions, the government will rest on its briefs. OK. You have a minute. Thank you, Your Honors. I would like to address two brief points in rebuttal. The first is responsive to the government's argument. I do think that the removal of the residual clause is critical to the court's analysis, because that was the sole basis relied upon by the court in Cox and in turn by the court in Shoemate to determine that solicitation could be included. And whether or not it's a constitutional issue, and the government is correct in pointing that out, and I do want to be clear on that, that in Beckles, the Supreme Court did determine that there would not be a problem of constitutional dimensions with the residual clause in the sentencing guidelines. But nonetheless, the guidelines in effect at the time of Mr. Sorenson's sentencing did not contain the residual clause, which was the sole basis for widening the net to include solicitation. And the only other point that I would like to make is that the concurrence in Shoemate left open the possibility for a different type of statute. And unlike the statute at issue in Shoemate, there's no Montana corollary indicating that solicitation is to get a third person to get involved in the distribution of drugs, which was the situation with the Oregon statute in Shoemate. Okay. Thank you. Thank you. Thank you, counsel. The matter will be submitted at this time.
judges: Wollman, Fernandez, Paez